UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Mohammed A.A., | Civ. No. 26-1734 (JWB/ECW) |
| Petitioner, | |
| v. | |
| James Tadman, *Sheriff, Polk County, MN*; David Easterwood, *Director of St. Paul Field Office, U.S. Immigration and Customs Enforcement*; Kristi Noem, *Secretary of the U.S. Department of Homeland Security*; and Pamela Bondi, *Attorney General of the United States, each in their official capacity*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

---

Abdinasir M. Abdulahi, AMA Law Office LLC, counsel for Petitioner.

David W. Fuller, Esq., and Jesus Cruz Rodriguez, Esq., United States Attorney's Office, counsel for Respondents.

---

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) after previously releasing him from custody under 8 U.S.C. § 1226 and placing him in removal proceedings under 8 U.S.C. § 1229. The answer is no.

Petitioner Mohammed A.A.'s attempt to enter Canada and subsequent compulsory return to the United States pursuant to the Safe Third Country Agreement do not render him a noncitizen "seeking admission" under § 1225. And because Respondents exercised authority to release Petitioner under § 1226, that statute—not § 1225—governs detention for his pending removal proceeding. Thus, the Petition is granted to the extent that it

requests release.

## BACKGROUND

Petitioner is a citizen of Somalia. (Doc. No. 1, Petition ¶ 17; Doc. No. 7, Patrin Decl. ¶ 5.) On February 2, 2024, Petitioner entered the United States and was encountered by United States Border Patrol ("CBP") near San Ysidro, California. (Petition ¶ 17; Patrin Decl. ¶ 6; Doc. No. 7-1 at 1; Doc. No. 7-5 at 2–3.) Petitioner claimed a fear of persecution and torture if returned to Somalia. (Petition ¶ 20; Doc. No. 7-5 at 2–3.)

That same day, Petitioner was issued a Notice to Appear designating him a noncitizen "present in the United States who has not been admitted or paroled." (Petition ¶ 18; Doc. No. 1-1; Patrin Decl. ¶¶ 6, 8; Doc. No. 7-1.) The Notice placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229(a), which governs full removal proceedings before an Immigration Judge. (*See* Doc. No. 1-1 at 1; Doc. No. 7-1 at 1.)

Petitioner was released from custody on his own recognizance. (Doc. No. 6 at 2; Patrin Decl. ¶ 7; Doc. No. 7-3; Doc. No. 7-5 at 2–3; Doc. No. 7-6.) The Order of Release on Recognizance ("OREC") states that it was "[i]n accordance with section 236 of the Immigration and Nationality Act," which corresponds with 8 U.S.C. § 1226. (Doc. No. 7-3 at 1.) Neither side has submitted evidence showing that Petitioner's OREC has been cancelled or revoked.

On August 15, 2024, Petitioner filed a timely application for asylum based on past persecution and fear of future persecution. (Petition ¶¶ 19–20; Patrin Decl. ¶ 9; Doc. No. 7-5 at 3.) That application remains pending, and Petitioner is scheduled to appear

2

before an Immigration Judge in Seattle, Washington on March 13, 2026. (Petition ¶ 19; Doc. No. 7-5 at 2–3.)

Petitioner attempted to flee to Canada on February 21, 2026, fearing that increased Immigration and Customs Enforcement ("ICE") activity would result in his deportation to Somalia. (Petition ¶ 22; Patrin Decl. ¶ 10.) When he was apprehended by the Canadian Border Services Agency, Petitioner made an asylum claim which was denied under the Safe Third Country Agreement ("STCA") between Canada and the United States. (Patrin Decl. ¶ 10; Doc. No. 7-4 at 1–3, 6–7; Doc. No. 7-5 at 2–3.)

Under the Safe Third Country Agreement ("STCA"), asylum seekers who present themselves at a land port of entry between the United States and Canada are generally required to pursue their asylum claim in the first of the two countries they entered, and will be returned to that country accordingly, unless one of four exceptions applies: a qualifying family member in the receiving country, unaccompanied minor status, possession of certain valid documents, or a public interest exception. *See* Agreement Between the Government of the United States of America and the Government of Canada for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries, Can.–U.S., Dec. 5, 2002, T.I.A.S. No. 04-1229 (2004).

The Canadian authorities "immediately" returned Petitioner to the United States, pursuant to the STCA, on February 21, 2026. (Petition ¶ 23; Patrin Decl. ¶ 10; Doc. No. 7-4 at 8–9; Doc. No. 7-5 at 2–3.) He was delivered to the Pembina, North Dakota port of entry and received there by CBP officers. (*See* Doc. No. 7-4 at 8; Doc. No. 7-5 at 2.)

The next day, CBP served Petitioner with an arrest warrant and detained him, citing § 1225(b)(2). (Patrin Decl. ¶ 11; Doc. No. 7-2.) That same day, CBP turned him over to ICE for removal proceedings pursuant to INA § 240. (Patrin Decl. ¶ 12; Doc. No. 7-5 at 3.) He has since remained detained at the Northwest Regional Corrections Center in Polk County, Minnesota. (Petition ¶¶ 1–2, 9, 12, 25; Patrin Decl. ¶ 13.)

Petitioner has no criminal history and alleges that he has complied with all immigration requirements. (Petition ¶ 21; Doc. No. 7-5 at 3.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

### II. Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He

4

does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

Respondents appear to assert two grounds for detaining Petitioner. First, they assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he is an applicant for admission at the border who is also "seeking admission" to the United States through his pending asylum application. Second, Respondents allude to Petitioner's alleged violation of his OREC as grounds for his arrest. Neither justifies Petitioner's detention.

A.   8 U.S.C. § 1225(b)(2)

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. In general, 8 U.S.C. § 1225 governs the process for inspecting noncitizens arriving to the country.

A noncitizen present in the United States who has not been admitted or who arrives in the United States is considered an "applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission, as well as those who are "otherwise seeking admission or readmission," must be inspected by immigration officers. *Id.* § 1225(a)(3). "Inspection" is the process by which immigration officers determine whether such noncitizens are admissible to the United States. *See id.* § 1225(a). Importantly, though, inspection does not equate to detention.

Detention authority is provided within § 1225(b), which creates two categories of specific inspection procedures.

First is § 1225(b)(1), which applies to a noncitizen who "is arriving" and is determined to be inadmissible due to "fraud, misrepresentation, or lack of valid documentation." *Id.* § 1225(b)(1)(A). The noncitizen might be subject to detention if they claim asylum, but only after certain determinations are made about their claim. *See id.* §§ 1225(b)(1)(B)(ii), (iii)(IV).

Second is § 1225(b)(2), which is a "catchall provision" for inspecting "other" noncitizens. *Id.* § 1225(b)(2); *Jennings*, 138 S. Ct. at 837. Under that provision, detention is mandatory for a noncitizen "seeking admission" who is found by the inspecting officer to be inadmissible. *Id.* § 1225(b)(2)(A). In that case, the noncitizen must be detained "for a proceeding under § 1229," indicating that § 1225(b)(2) detention is tethered to the initiation of removal proceedings before an Immigration Judge. *Id.*

Respondents assert that Petitioner is properly detained under § 1225(b)(2); they do not invoke § 1225(b)(1). (*See* Doc. No. 6 at 2–5.)

Respondents specifically argue that Petitioner is subject to § 1225(b)(2) because he is an applicant for admission who is not subject to § 1225(b)(1). (Doc. No. 6 at 2–4.) This interpretation of § 1225(b)(2) has been litigated extensively and largely rejected by this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Such an expansive reading of § 1225(b)(2) collapses the statutory

6

structure Congress enacted and renders the "seeking admission" phrase meaningless.

Respondents also seem to argue that Petitioner is nonetheless "seeking admission" because he has a pending application for asylum. (Doc. No. 6 at 4–5.) As this Court and others have observed, this argument "blur[s] two distinct legal concepts" by equating seeking asylum, which concerns status, with "seeking admission," which concerns legal entry. *Junior O.P.V. v. Bondi*, Civ. No. 26-890, Doc. No. 9 at 5 (D. Minn. Feb. 3, 2026) (noting that an asylum application would not make petitioner a noncitizen "seeking admission" under § 1225); *see also Gabriel J. v. Bondi*, Civ. No. 26-865 (SRN/LIB), 2026 WL 295192, at *3 (D. Minn. Feb. 4, 2026); *Yao v. Almodovar*, Civ. No. 25-9982 (PAE), 2025 WL 3653433, at *9 (S.D.N.Y. Dec. 17, 2025). A pending application for asylum does not mean that Petitioner is perpetually "seeking admission" within the meaning of § 1225(b)(2)(A).

Although Respondents do not explicitly argue that Petitioner's return to the United States pursuant to the STCA constitutes "seeking admission," the argument is at least implicitly raised by their supporting declaration. (*See* Patrin Decl. ¶¶ 10–12.) The facts presented here do not support that conclusion. Petitioner was returned to the United States by Canadian officials pursuant to an agreement between the two nations and was then taken into custody by Respondents. Petitioner may have qualified as an applicant for admission pursuant to § 1225(a)(1) and therefore had to be inspected under § 1225(a)(3). But an administrative transfer pursuant to an international agreement does not equate to "seeking admission."

The record instead shows that Petitioner was attempting to do the opposite—to

7

leave the United States and seek refuge in Canada. He returned only because Canadian officials transferred him back under the STCA. On these facts, the detention authority in § 1225(b)(2) does not apply. *But see Barrow v. Noem*, Civ. No. 26-1029 (JMG/ECW), 2026 WL 445500, at *2 (D. Minn. Feb. 17, 2026) (denying habeas relief to noncitizen who was returned to the United States pursuant to the STCA).

Another important consideration reinforces this conclusion. Respondents had already inspected Petitioner, placed him in removal proceedings before an Immigration Judge, and exercised their discretion to release him under § 1226 when he first arrived to the United States in February 2024. (Patrin Decl. ¶¶ 6–7; Doc. No. 1-1; Doc. No. 7-5 at 3–4.) Treating Petitioner's later encounter at a port of entry as resetting the governing detention statute would ignore that procedural posture.

Congress has not said that leaving the country and returning during a pending removal case necessarily resets the statutory authority governing detention while that case proceeds. Reading such a rule into the statute would elevate geography over the statutory framework Congress enacted and require this Court to invent or infer a mechanism that Congress has not created. This Court declines to do so.

To illustrate why not, consider a slightly different scenario. Detroit, Michigan and Windsor, Ontario sit directly across the Detroit River from one another, connected by an international bridge. A noncitizen residing in Detroit—already in removal proceedings and released pursuant to § 1226—might briefly visit family in Windsor and, upon returning across the bridge to Detroit, suddenly become subject to mandatory detention under § 1225(b)(2), even though the same removal proceeding continues uninterrupted.

8

Petitioner's case here is even simpler. He did not choose to cross the border at all; he was transferred across it by the authorities. But in either circumstance, an existing removal proceeding and custody determination are not unwound by § 1225(b)(2) merely because the noncitizen returned to a port of entry.

Detention under § 1225(b)(2)(A) is "for" a removal proceeding. Read in the context of the surrounding inspection provisions, the proceeding for which detention is authorized is not just any removal proceeding; it is one that results from the inspecting officer determining that the noncitizen is not clearly entitled to admission. *See* § 1225(b)(2)(A). That determination leads to the initiation of removal proceedings before an Immigration Judge through the issuance of a Notice to Appear under § 1229(a).

This Court and many others have generally recognized that § 1225 applies to border encounters, while § 1226 governs detention during removal proceedings within the interior of the country. But the mere fact that a noncitizen is encountered at a port of entry is not dispositive of detention authority. The facts must still fit the inspection and detention provisions Congress enacted § 1225. Here they do not. Petitioner was not "seeking admission" when he was involuntarily returned to a United States port of entry, and Respondents did not detain him "for a proceeding under 1229a" initiated as the result of a § 1225 inspection. Accordingly, § 1225(b)(2) does not authorize his detention.

**B.     Order of Release on Recognizance**

Respondents also suggest that Petitioner was arrested because he violated the conditions of his OREC. (Doc. No. 6 at 1–3.) Petitioner's OREC notes that he must get written permission from his immigration case officer before changing his place of

9

residence and that he "must not violate any local, State, or Federal laws or ordinances." (Doc. No. 7-3.) The OREC also warns that failure to comply with these conditions "may result in revocation of your release and your arrest and detention by the Department of Homeland Security." (*Id.*) The document also includes a specific section for cancelling the OREC, to be completed, signed, and dated by an immigration officer. (*Id.*)

According to Respondents, Petitioner failed to comply with his OREC when he attempted to seek asylum in Canada and thereby change his place of residence without permission from his immigration officer. (Doc. No. 6 at 1–2.) However, the record does not show that any immigration officer actually cancelled Petitioner's OREC. *See Salazar v. Noem*, Civ. No. 26-1040 (JMG/EMB), 2026 WL 381889, at *1–2 (D. Minn. Feb. 11, 2026) (recognizing that noncitizens released on recognizance are entitled to "a suite of procedural protections," including the administrative process for revoking release, and finding detention unlawful where the petitioner's OREC had not been formally revoked).

Although Respondents submitted an arrest warrant, the warrant does not invoke the alleged breach of Petitioner's OREC. Instead, it relies on the "pendency of ongoing removal proceedings" and records indicating that Petitioner "is removable under U.S. immigration law" to establish probable cause for arrest. (Doc. No. 7-2.) Nothing in the record shows that Respondents revoked Petitioner's OREC. It instead shows that Petitioner remains subject to the conditions of his February 2, 2024 release.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is therefore unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Thus, Petitioner is

entitled to a writ of habeas corpus directing his immediate release subject to the conditions of his 2024 Order of Release on Recognizance. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Respondents argue that if Petitioner has been misclassified under § 1225, the proper remedy is a bond hearing under § 1226 rather than release. But a bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been invoked or established, ordering a bond hearing would treat the absence of statutory power as a mere procedural defect rather than a substantive one. Habeas relief addresses the lawfulness of custody itself, not merely the adequacy of procedures that might attend some other, uninvoked basis for detention. *See Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995). When detention lacks a lawful predicate, release is the appropriate remedy. *Munaf*, 553 U.S. at 693.

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown that Respondents have not invoked a provision of the INA that authorizes his continued detention, the Petition for Writ of Habeas Corpus is granted. Petitioner's other habeas claims are not reached.

This Order does not bar future custody action taken in compliance with the governing law.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1.  Petitioner Mohammed A.A.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

2.  **Release**. Respondents shall immediately release Petitioner from custody. He must be released in Minnesota only subject to his 2024 Order for Release on Recognizance. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiation of return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or

discretionary release authority.

3.     **Notice.** Respondents shall file an update on the status of Petitioner's release by 7:05 p.m. on March 15, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. The update must also confirm that Respondents have not imposed conditions on Petitioner's release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release, and the absence of release conditions, promptly upon Petitioner's arrival in Minnesota.

4.     Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5.     Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 13, 2026             *s/ Jerry W. Blackwell*
Time: 7:05 p.m.                  JERRY W. BLACKWELL
                                          United States District Judge